By the Court.—Speir, J.
It appears from the case that the plaintiff, in June, 1876,- was in actual pos *491 session of the lot in question, and had been since the preceding September, having it enclosed with a board fence with all the others included in the square bounded by One-Hundred-and-Twentieth street, Third avenue, One-Hundred-and-Twenty-first street and Sylvan place, except a plot in Third avenue one hundred feet in depth on One-Hundred-and-Twentieth street—being the south-east portion of the square. He had leased portions of this square to tenants, collected rents from them, erected buildings on different parts of the property, and asserted ownership to all the property so enclosed.
The testimony of the witnesses shows that the fence was occasionally taken down by persons in the neighborhood for short periods of time, still it is plain from all the evidence that the occupation was a continued one, and that the buildings were erected by the plaintiff under permits obtained from the city.
The action is brought against Darcy alone, who claims title as lessee from the mayor, aldermen, &c., who by the court were permitted to put in an amended answer to the complaint, and cannot therefore set up any defense except through Darcy. He had no title nor right to possession. Unless the relation of landlord and tenant is shown to exist between them, the mayor, &c., cannot defend the suit.
The main question in the case is, did that relation exist %
It is claimed by the defense that the city acquired title to a certain tract of land of which the land in controversy is a part under the act of 1839, chapter 246. This act declared that the corporation should become ' vested with the title to said tract by like’ proceedings as were prescribed by the laws of 1834, chapter 150, excepting the first and twentieth sections of that act.
Passing for the present that the act makes no provision for taking property for public use, and is there *492 fore unconstitutional, I am of the opinion that the city’s counsel have wholly failed to prove by their witnesses and the proceedings taken from the files of the court, that the city became and were seized in fee simple absolute of all the land described in the act. Assuming that the act conferred the power to take the steps claimed by the defendant, the decree pronounced by the supreme court was invalid.
In this matter the court had only a special and limited jurisdiction, and in such cases it is well settled that all its proceedings are of no avail unless every step prescribed by the statute is proved to have been taken. Unless a court has jurisdiction it can never make a record which imports incontrovertible verity to the party over whom it has usurped jurisdiction (Starbuck v. Murray, 5 Wend. 158). No court or officer can acquire jurisdiction by the mere assertion of it (People v. Cassels, 5 Hill, 165).
The act of 1834, chapter 150, section 2, prescribes that the proceedings are to be commenced “on application of the mayor, aldermen and commonalty to the supreme court; that the court or one of the justices to whom such application is made, shall appoint three disinterested persons, &c.” It is plain that such application is the foundation of the limited jurisdiction conferred, and there is no proof that any such application was made by the mayor, &c. The provisions of the act of 1834 were not complied with in the necessary steps to . be taken in the confirmation of the commissioners’ report to the court, and failure to comply with these provisions was a fatal defect. In Matter of City of Buffalo (78 N. Y. 362), it is held that where power "is delegated by the legislature to a municipal corporation to take the property of the citizen in inmlum, all the prescribed prerequisites to the exercise of that power must be strictly observed and conformed to. In other words, it cannot be presumed that these re *493 quirements have been met—the corporation must be able to show it. The answer sets up a lease dated April 3, 1876, which is put in evidence by the defendant, between the mayor, &c., acting by the commissioners of the sinking fund, and the defendant, Darcy, under which he claimed title. This lease is executed by Andrew H. Green, and not by the board of commissioners of the sinking fund,, nor by the mayor, aider-men, &c. This lease has no validity and confers no title upon Darcy. It was not executed by the commissioners of the sinking fund, who appear upon the face of the lease to be acting as the agent of the city. Besides, Green, as an individual or as comptroller, had no authority to execute the lease.
The plaintiff, as we have seen, was in actual possession of the premises. This was enough to enable him to recover it from Darcy, a mere trespasser, who entered without any title. The plaintiff recovers on the strength of his own title and not on the weakness of the defendant’s title, which is a rule applicable to all actions for the recovery of property (Christy v. Scott, 14 How. U. S. 392).
But it seems clear to us that the city acquired no title under the act of 1839, or the act of 1834, to which it refers, as no provision is made for taking private property for public use. There is nothing appearing upon the face of these statutes, or by the case, showing what facts existed to justify the legislature in enacting them, and thereby assuming to authorize the sale of the lands mentioned in them. If any necessity existed for the action of the legislature, the proofs are not furnished us, nor are they recited in the statutes. It is not claimed that the city used more than two or three lots of the whole square for a market, engine and hose companies, prior to 1862 or 1863, upwards of twenty years after the act was passed, or that it was used as a square more than six or seven years. In April, 1876, *494 it undertook to lease the lot in controversy for private use. I am of the opinion that unless the legislature have the grounds of the application laid before it, showing the necessity and the public use of the land to be taken by the city, and incorporated in the act itself, the act is unconstitutional and void. Without these prerequisites, it is simply a transfer of one man’s property to another without the consent of the owner, and though compensation be made when adjudged by the court, it makes no difference whether the transfer is made to an individual or a municipal corporation.
The legislature is asked to convey lands to the city in fee simple absolute. If this can be done without disclosing the public use, there is no restraint upon legislative power, and without this the legislature is absolute and can act independent of the restraints of the constitution.
Judgment should be entered for the plaintiff upon the verdict.
Russell, J., concurred.